# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JUANITA GAINES** | * | |
|   100 N. Calvert Street<br>  Baltimore MD 21202 | * | |
| **Plaintiff** | * | |
|    v. | * | |
| | * | |
| **STATE OF MARYLAND** | * | |
| | * | Civil No. 12-CV-01126-JKB |
|   100 State Circle<br>  Annapolis MD 21401 | * | (Complaint for Sex Discrimination; |
| | * |  Civil Rights Violations) |
|   And | * | |
| | | (Jury Trial Demand) |
| **JOHN ANDERSON** | * | |
|   100 N. Calvert Street<br>  Baltimore MD 21202 | * | |
| | * | |
|   And | | |
| **HENRY MARTIN** | * | |
|   100 N. Calvert Street<br>  Baltimore MD 21202 | * | |
| | * | |

1

     **And**

**JASON GRUZ**                           \*

      100 N. Calvert Street         \*
      Baltimore MD 21202
                                         \*

     **Defendants**                          \*

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## FIRST AMENDED COMPLAINT

## AND JURY TRIAL DEMAND

### INTRODUCTION

Plaintiff, by and through undersigned counsel, files this First Amended Complaint for Sex Discrimination and violations of Civil Rights against Defendants, and in support thereof, alleges and states as follows:

                              **A.**     **JURISDICTION**

1.     Plaintiff brings her action for employment discrimination on the basis of sex pursuant to Title VII of the Civil Rights Act of 1964, Sec. 2000e, *et seq.*, 42 U. S. C. ("Title VII"). The Court has jurisdiction pursuant to Sec. 2000e-5, 42 U. S. C., and Sec. 1331, 28 U. S. C.

2.     Plaintiff also brings her action for retaliation pursuant to Title VII of the Civil Rights Act of 1964, Sec. 2000e, *et seq.*, 42 U. S. C. ("Title VII"). The Court has jurisdiction pursuant to Sec. 2000e-5, 42 U. S. C., and Sec. 1331, 28 U. S. C.

3. **In addition, Plaintiff brings her action for violation of her civil rights, namely, her right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution. The Court has jurisdiction over the civil rights claims pursuant to Sec. 1983, 42 U.S. C.**

### B. PARTIES

4. **At all times relevant to the matters set forth in the Complaint, Juanita Gaines, Plaintiff, was an employee, deputy sheriff and member of the Baltimore City Sheriff's Office ("BCSO") an agency and department of the State of Maryland ("State"), and of the State, Defendant, employer of Plaintiff**

5. **The BCSO employs more than 100 people.**

6. **The State, Defendant, is one of the 50 States of the United States of America which employs more than 500 people.**

7. **John Anderson ("Anderson"), Sheriff, is the head of the BCSO; Henry Martin ("Martin"), is the Chief Deputy Sheriff; and, Jason Gruz ("Gruz") a Deputy Sheriff and Sergeant, Defendants, are agents, servants, employees, supervisors, managers, officers, officials and members of the BCSO and the State. They are being sued in their individual capacities.**

8. **The State is a person and employer within the meaning of Title VII.**

### C. VENUE

9. **Plaintiff resides in, and at all times relevant to her Complaint resided in, the State and District of Maryland.**

**10.** Defendants do business in, and at all times relevant to the Complaint did business in, the State and District of Maryland.

**11.** Venue properly lies in the State and District of Maryland.

### D. BACKGROUND FACTS

**12.** From on or about September, 2008, up to and including the present, Defendants discriminated against Plaintiff, a female, by among other ways subjecting her to discriminatory terms, conditions and privileges of employment because of her sex; and retaliated against Plaintiff for among other things complaining about an internal investigation of a shooting incident involving her and other Deputy Sheriffs in September 2008; participating in the campaign of a candidate who was running against Anderson, the incumbent Sheriff, in the summer of 2010; and complaining about unwarranted and illegal investigations, disciplinary charges and disciplinary actions against her; abridged her civil rights to equal protection of the laws, by, among other things:

a. Initiating and maintaining false disciplinary charges and taking adverse personnel and disciplinary actions against Plaintiff after she complained about the outcome of an internal investigation of a shooting incident involving her, Deputy James Lane and other Deputies on or about September 15, 2008. Investigators concluded that Deputy Lane was shot in the face by a suspect wanted on a warrant. Plaintiff contended that Deputy Lane was shot by a fellow Deputy Sheriff.

b. Initiating and maintaining false disciplinary charges and taking adverse personnel and disciplinary actions against Plaintiff because she participated the election campaign of Debra Claridy who was running in the Democratic Primary Election of 2010

for the Office of Sheriff of Baltimore City. Anderson was the incumbent Sheriff who was seeking reelection to office.

  c. Initiating and maintaining false disciplinary charges and taking adverse personnel and disciplinary actions against Plaintiff because she filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

  d. Initiating and maintaining false disciplinary charges and taking adverse personnel and disciplinary actions against Plaintiff because she complained internally about the adverse personnel and disciplinary actions taken against her.

  e. Repeatedly suspending Plaintiff's police powers without just cause;

  f. Repeatedly transferring Plaintiff from one menial task to another menial task without just cause;

  g. Refusing to reinstate Plaintiff to full duty Deputy Sheriff status after having placed her on suspension on the basis of false charges for a period of more than 2 years without just cause.

  13. Plaintiff's job performance was satisfactory.

  14. Plaintiff did not do or say anything at the workplace which warranted such actions by Defendants.

5

15. **Neither Defendants nor their agents, servants, employees, members, supervisors, managers, officers and officials initiated any such inquiries, reviews, investigations or other actions against similarly situated and employed male employees.**

16. **Defendants knew or should have known that Plaintiff was being subjected to unlawful employment discrimination and civil rights violations as alleged herein.**

17. **Defendants failed to act reasonably to prevent the discrimination and civil rights violations against Plaintiff as alleged herein.**

18. **Defendants failed to act reasonably to correct the discrimination and civil rights violations against Plaintiff as alleged herein.**

19. **The discrimination and civil rights violations as alleged herein were intentional.**

20. **The discrimination and civil rights violations as alleged herein altered the terms and conditions of Plaintiff's employment.**

21. **The discrimination and civil rights violations as alleged herein created a hostile work environment in which Plaintiff had to work.**

22. **The discrimination and civil rights violations as alleged herein were the direct and proximate causes of injuries to Plaintiff which resulted in damages.**

23. **The individual Defendants engaged in intentional discrimination and civil rights violations as alleged herein, with malice, and with a reckless indifference to the federally protected rights of Plaintiff under the Fourteenth Amendment to the United States Constitution.**

24. **All conditions precedent to the filing of the Complaint, have been adhered to, performed and occurred in that, among other things:**

  **a. Plaintiff filed a timely Charge of Discrimination against Defendants concurrently with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC");**

  **b. After conducting and concluding its investigation, the EEOC issued a Determination and a right to sue letter.**

  **d. Plaintiff received the right to sue letter and has timely filed the suit.**

  **e. Plaintiff also filed grievances.**

  **f. The documents relating to the Charge of Discrimination are attached hereto as Exhibit A, and are incorporated herein fully by reference.**

### E. COUNT ONE

**(Unlawful Employment Practices, Title VII)**

**(Sex Discrimination, Hostile Work Environment)**

**(State of Maryland, Defendant)**

**25. Plaintiff reasserts, alleges and states under this Count One, Paragraphs 1 to 24 of the Complaint, and incorporates fully hereunder those allegations and statements.**

**26. On or about September 15, 2008 Plaintiff was a Deputy Sheriff assigned to the Special Operations Unit ("SOU") of the BCSO. SOU members had high profile duties including executing warrants and making arrests on those warrants, and working with state prosecutors providing protection to witnesses. Plaintiff received awards and citations for her work. She was the only female in SOU. The SOU is the most elite unit of the BCSO. Assignment to the unit is prestigious, and puts a deputy sheriff on a career track for rapid advancement and promotions.**

Case 1:12-cv-01236-JKB Document 151 Filed 05/27/13 Page 7 of 16

27. On that date, Plaintiff was with a group of other Deputies executing a felony warrant. During the course of executing the warrant, Deputy James Lane was shot in the face. Following a shootout with the suspect, the suspect was killed. Investigators concluded that Deputy Lane was shot by the suspect.

28. Following the incident, Plaintiff was on medical leave. While on leave, she discussed the shooting incident with other Deputies who were at the scene. She concluded that Deputy Lane was not shot by the suspect; she concluded he was probably shot by a fellow Deputy.

29. On or about November 24, 2008, Plaintiff returned to work. The Deputy she suspected of the shooting asked her to accompany him on an assignment. She declined. He reported Plaintiff to a Major. The Major collaborated with Martin and Anderson about the matter. They directed the Major to reassign Plaintiff to the Domestic Violence Unit immediately. She was then transferred. Plaintiff went through the chain of command to find out why she was being abruptly transferred. No one in her chain provided an answer for why she was being transferred.

30. Following her transfer, Plaintiff made a complaint about the transfer to the Inspector General for Baltimore City. The Inspector General talked to Anderson. Anderson then reversed the transfer, and Plaintiff returned to the SOU on or about May 15, 2009. Upon information and belief, the Inspector General advised Anderson that the abrupt transfer under the circumstances was patently illegal because it would represent discrimination on the basis of sex and race, and Anderson acted immediately upon that advice and reversed the transfer.

31. On or about March 1, 2010, Plaintiff's Sergeant, her immediate supervisor, was replaced by Gruz, a white male. Immediately, Gruz showed a disdain for Plaintiff. He began giving the male Deputies the choice assignments, and tasks which would give them the opportunities to earn overtime pay. He did not give Plaintiff any such choice assignments or tasks to earn overtime pay.

   a. Loss of the assignments adversely affected Plaintiff's ability to advance her career and seek a promotion.

   b. She also lost nearly 25% of her compensation.

   c. Anderson and Martin were aware of and approved Gruz's actions, and they took no action to intervene and prevent or correct his actions.

32. On or about March 16, 2010, under and at the direction of Anderson and Martin, Gruz announced that all of the Deputies in the SOU had to reapply for their positions in the unit, or request transfers to other units. Plaintiff went through her chain of command to ask why Deputies had to reapply for their positions. That chain of command included Gruz, Plaintiff's sergeant, Martin, the Deputy Chief; and, Anderson, the Sheriff. No one provided an answer to Plaintiff's question.

33. Upon information and belief Anderson and Martin devised and implemented the reapplication process initiative as a subterfuge which would lead to Plaintiff's removal from the SOU and her eventual resignation from the BCSO.

34. Plaintiff was not scheduled to be interviewed for the SOU even though she had reapplied for the unit and asked for an interview. When she consulted her chain of command, no one had an answer for why she was not scheduled. She met with Martin on or about March 29, 2010 to discuss the situation. He pretended not to know why she had not

9

been scheduled for an interview. They got into a heated argument during which Plaintiff asserted that she did not get the interview because Anderson through Martin and the other managers and supervisors of Plaintiff's chain of command intended to remove her from the SOU because of her contention that Deputy Lane was shot by a fellow Deputy during the September 2008 incident. Martin did not dispute or disagree with her assertion. In an effort to placate Plaintiff, Martin said he would have an internal investigation conducted on the shooting incident knowing at the time that no such internal investigation would be initiated because Anderson did want the investigation of the shooting incident to be reopened. Upon information and belief, no internal investigation has been initiated or conducted.

35. On or about April 16, 2010, Anderson in collaboration with Martin directed subordinates to transfer Plaintiff. She was transferred to the Juvenile Justice Center and assigned to routine duties which generally were handled by less senior deputies, and administrative duties which generally were handled by civilians.

    a. Plaintiff was the only deputy sheriff transferred from the SOU.

    b. None of the other deputy sheriffs, all males, were transferred from the SOU.

    c. Transfer from the SOU and reassignment to the Juvenile Justice Center was a significant setback to Plaintiff's career track, and for her opportunities to advance and be promoted. It was punitive, and was intended to force her to resign.

36. Title VII of the Civil Rights Act of 1964, Sec. 2000e-2(a)(1) states in pertinent part, as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

10

**37.     The State, by and through Anderson, Martin, Gruz and others, engaged in intentional employment discrimination and employment practices which discriminated against Plaintiff, as alleged herein, on the basis of sex including but not limited to conditions creating a hostile work environment on the basis of sex, in violation of Title VII.**

**38.     Plaintiff's job performance was satisfactory.**

**39.     Plaintiff did not do or say anything at the workplace which warranted such actions.**

**40.     The State did not initiate any such actions or transfers of similarly situated and employed male employees.**

**41.     The State knew or should have known that Plaintiff was being subjected to unlawful employment discrimination as alleged herein.**

**42.     The State failed to act reasonably to prevent the discrimination against Plaintiff as alleged herein, and to correct the discrimination against Plaintiff as alleged herein.**

**43.     The  discrimination as alleged herein was intentional, and  altered the terms and conditions of Plaintiff's employment.**


**44.     The State's conduct and actions were the direct and proximate causes of substantial injuries to Plaintiff, including, among other things, embarrassment, loss of prestige, humiliation, mental distress and emotional distress, and diminution of her good name, reputation, honor and integrity, for which the State is liable for damages.**

**WHEREFORE Plaintiff prays that this Honorable Court will enter (a) a Declaratory Judgment in favor of Plaintiff declaring that the State violated Title VII on the basis of sex;**

and, (b) a judgment in favor of Plaintiff and against the State for compensatory and consequential damages in the amount of $1 Million.

### F.    COUNT TWO

(Other Unlawful Employment Practices, Title VII)

(Retaliation)

(State of Maryland, Defendant)

45.    Plaintiff reasserts, alleges and states under this Count Two, Paragraphs 1 to 44 of the Complaint, and incorporates fully hereunder those allegations and statements.

46.    Title VII of the Civil Rights Act of 1964, Sec. 2000e-3 (a) states in pertinent part, as follows:

> **(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings**
>
> **It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.**

47.    The State, by and through Anderson and others, retaliated against Plaintiff for among other things complaining about adverse personnel and disciplinary actions, complaining to the Inspector General and filing a charge of discrimination with the EEOC.

12

48. The State further retaliated against Plaintiff, by among other things:

a. Removing Plaintiff from the SOU without just cause;

b. Repeatedly transferring Plaintiff without any notice, without any explanations and without just cause;

c. Repeatedly requiring Plaintiff to perform menial tasks without just cause;

d. As explained more fully in Plaintiff's Charge of Discrimination and supporting documents, repeatedly filing false charges against Plaintiff, and initiating personnel and disciplinary actions against her on such charges;

e. As explained more fully in Plaintiff's Charge of Discrimination and supporting documents, repeatedly suspending Plaintiff's police powers without just cause; and,

f. Terminating Plaintiff's employment.

49. The State's conduct and actions were the direct and proximate causes of substantial injuries to Plaintiff, including, among other things, embarrassment, loss of prestige, humiliation, mental distress and emotional distress, and diminution of her good name, reputation, honor and integrity, for which the State is liable for damages.

WHEREFORE Plaintiff prays that this Honorable Court will enter (a) a Declaratory Judgment in favor of Plaintiff declaring that the State violated Title VII on the basis of retaliation; and, (b) a judgment in favor of Plaintiff and against the State for compensatory and consequential damages in the amount of $1 Million.

## G.     COUNT THREE

(Equal Protection Violation & Retaliation)

(Fourteenth Amendment - U. S. Constitution)

(Anderson, Martin, Gruz, Defendants, Individually)

50.     Plaintiff reasserts, alleges and states under this Count Three, Paragraphs 1 to 49 of the Complaint, and incorporates fully hereunder those allegations and statements.

51.     The Fourteenth Amendment to the U.S. Constitution states as follows:

**All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

52.     Section 1983, 42 U. S. C. states as follows:

**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.**

53.     Anderson, Martin, Gruz, Defendants, individually, are "persons" as that term is used in the text of  Section 1983.

14

54. Under color of State Law, Defendants separately and in concert with each other, knowingly, intentionally and willfully violated equal protection rights of the Plaintiff as guaranteed by the Fourteenth Amendment to the U.S. Constitution by discriminating against her in her employment, and by retaliating against her because of her sex.

55. Defendants actions and conduct were done with ill will, an evil purpose and malice.

WHEREFORE Plaintiff prays that this Honorable Court will enter (a) a Declaratory Judgment in favor of Plaintiff declaring that Anderson, Martin and Gruz violated Plaintiff's equal protection rights; (b) a judgment in favor of Plaintiff and against Anderson, Martin and Gruz for compensatory and consequential damages in the amount of $1 Million; and, (c) a judgment in favor of Plaintiff and against Anderson, Martin and Gruz for punitive damages in the amount of $2 Million.

### H. ADDITIONAL ALLEGATIONS

56. With respect to all Counts of the Complaint, the individual Defendants conferred with each other, collaborated with each other; reached a consensus among themselves; acted in concert; and approved and ratified each and every one of the acts and other conduct set forth in this Complaint adverse to Plaintiff.

57. The individual Defendants are jointly and severally liable for those actions and conduct.

58. With respect to Counts One and Two of the Complaint, the State is vicariously responsible, accountable and liable for the conduct and actions of Anderson, Martin and Gruz.

## I. OTHER RELIEF

Plaintiff prays that this Honorable Court will grant the following additional relief:

A. Order Defendants to reinstate Plaintiff's employment, and restore Plaintiff to full time duty status as a Deputy Sheriff with full police powers.

B. Order Defendants to take any other actions that will make Plaintiff whole.

C. Award Plaintiff reasonable attorney's fees, costs and expenses; and,

D. Afford Plaintiff such further and additional relief as the justice of the cause requires under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Respectfully Submitted

*/S/ Neal M. Janey*

Neal M. Janey

Attorney-At-Law
Federal Bar No. 02285
12 W. Montgomery Street, #200
Baltimore, Maryland 21230
Telephone:   410-340-6616
Facsimile:   410-752-2579

Attorney for Plaintiff