## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JUANITA GAINES,               *

      Plaintiff           *

v.                         *

                                 **CIVIL No. JKB-12-1126**

HENRY MARTIN, *et al*.      *

      Defendants.      *

                              *

*    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Juanita Gaines ("Plaintiff") brought this suit against John Anderson, Henry Martin, and Jason Gruz (collectively, "Individual Defendants"), as well as the State of Maryland ("Maryland" and, together with Individual Defendants, "Defendants") alleging discrimination on the basis of sex and retaliation in violation of (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*., (2) 42 U.S.C. § 1983, and (3) the Fourteenth Amendment to the United States Constitution.  Now pending before the Court is Defendants' motion to dismiss for lack of jurisdiction and failure to state a claim for which relief can be granted (ECF No. 31).  The issues have been briefed and no hearing is required.  Local Rule 105.6.  For the reasons set forth below, the motion will be granted.

## I.      BACKGROUND[1]

Plaintiff is a deputy sheriff with the Baltimore City Sheriff's Office ("BCSO"), who was assigned to the Special Operations Unit ("SOU").  The SOU  is charged with "high profile duties including executing warrants, [] making arrests on those warrants, and working with state

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

prosecutors [to] provid[e] protection to witnesses." (Am. Compl. at ¶ 26.) The SOU is considered a prestigious unit, which affords deputy sheriffs an opportunity for rapid career advancement. (*Id.*) Plaintiff was the only female in the SOU and received awards and citations for her work. (*Id.*)

On September 15, 2008, Plaintiff was executing a warrant with other deputy sheriffs in the SOU when Deputy James Lane was shot in the face. (*Id.* at ¶ 27.) An investigation of this incident concluded that Deputy Lane was shot by the subject of the warrant. (*Id.*)

Following the incident, Plaintiff was on medical leave.[2] (*Id.* at ¶ 28.) During her leave, she discussed the shootout with other deputy sheriffs who were at the scene and came to the conclusion that Deputy Lane had, in fact, probably been shot by a certain fellow deputy. (*Id.*)

Plaintiff returned to work around November 24, 2008. (*Id.* at ¶ 29.) Upon returning, the deputy whom she suspected of having shot Deputy Lane asked her to accompany him on an assignment. (*Id.*) Plaintiff declined, and the deputy reported Plaintiff to a Major. (*Id.*) On orders from Defendant Anderson (the Baltimore City Sheriff) and Defendant Martin (the Chief Deputy Sheriff) the Major reassigned Plaintiff to the Domestic Violence Unit of the BCSO. (*Id.*) Despite repeated requests to individuals throughout the BCSO chain of command, Plaintiff was unable to learn why she had been transferred. (*Id.*)

Following the transfer, Plaintiff lodged a complaint with the Inspector General for Baltimore City. (*Id.*) Defendant Anderson then reversed the transfer and around May 15, 2009, Plaintiff returned to the SOU. (*Id.*)

On or about March 1, 2010, Defendant Gruz, a white male became Plaintiff's immediate supervisor. (*Id.* at ¶ 31.) Gruz immediately showed a disdain for Plaintiff and gave Plaintiff's colleagues—all of them male—the choice assignments—namely those that provided an

---

[2] It is unclear from Plaintiff's pleadings whether or not her medical leave was related to the shootout.

opportunity for overtime pay.  (*Id*. at ¶ 31.)  As a result of this policy, Plaintiff lost nearly 25% of her compensation.  (*Id*.)  This policy also adversely affected Plaintiff's ability to advance her career.  (*Id*.)

About two weeks later, at the direction of Anderson and Martin, Gruz announced that all of the deputy sheriffs in the SOU would be required to "reapply for their positions in the unit, or request transfers to other units."  (*Id*. at ¶ 32.)  Again, despite repeated requests to individuals throughout the BCSO chain of command, Plaintiff was unable to learn why this policy was put in place.  (*Id*.)  However, "[u]pon information and belief Anderson and Martin implemented the reapplication process initiative as a subterfuge which would lead to Plaintiff's removal from the SOU and her eventual resignation from the BCSO."  (*Id*. at ¶ 33.)

Plaintiff reapplied for the SOU but was not scheduled for an interview.  (*Id*. at ¶ 34.)  On March 29, 2010, she asked Martin why she had not been offered an interview.  (*Id*.)  "Martin pretended not to know why [this was]."  (*Id*.)  Plaintiff suggested to Martin that "Anderson through Martin and the other managers and supervisors of Plaintiff's chain of command intended to remove her from the SOU because of her contention that Deputy Lane was shot by a fellow Deputy during the September 2008 incident.  Martin did not dispute or disagree with her assertion."  (*Id*.)

Also on March 29, 2010 Plaintiff filed an intake questionnaire with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and sex. (ECF No. 18-2 at 3.)  This was followed by a charge of discrimination, filed with the Maryland Commission on Human Relations ("MCHR") and the EEOC on July 9, 2010, that alleged discrimination on the basis of sex and retaliation.  (*Id.* at 6.)[3]

---

[3] The documents attached to plaintiff's amended complaint as Exhibit A include (1) an April 7, 2010 letter from the Baltimore Field Office of the EEOC to Plaintiff; (2) a March 29, 2010 EEOC intake questionnaire signed by

On or about April 16, 2010, Anderson and Martin directed their subordinates to transfer Plaintiff into the Juvenile Justice Center. (Am. Compl. at ¶ 35.) Plaintiff was the only deputy sheriff transferred out of the SOU. (*Id.*) At the Juvenile Justice Center, she was assigned to duties generally assigned to more junior deputies and civilians. (*Id.*) This transfer was "a significant setback to Plaintiff's career track." (*Id.*) It was "punitive [] and was intended to force her to resign." (*Id.*)

Plaintiff also alleges that she was retaliated against "for among other things complaining about adverse personnel and disciplinary action, complaining to the Inspector General and filing a charge of discrimination with the EEOC. " (*Id.* at ¶ 47.) Plaintiff alleges that on a number of occasions, her superiors disciplined her as a means of retaliating against her for complaining to the EEOC. (ECF No. 18-2 at 9-10.)

On January 13, 2012, the EEOC issued Plaintiff a "right to sue" letter. (ECF No. 18-2 at 12.) Plaintiff filed the present law suit on April 12, 2012. (ECF No. 1.) Defendants now move to dismiss the case for lack of jurisdiction and failure to state a claim for which relief can be granted. (ECF No. 31.)

## II.    LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not,

---

Plaintiff; (3) a charge of discrimination filed by Plaintiff with the MCHR and the EEOC on July 9, 2010; (4) a March 22, 2011 letter from Plaintiff's counsel to the EEOC investigator with regard to Plaintiff's charge of discrimination; and (5) a "right to sue" letter from the EEOC to Plaintiff. (ECF No. 18-2.) These documents are incorporated by reference into Plaintiff's amended complaint.

however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1). Where the court's subject matter jurisdiction is in dispute, the plaintiff bears the burden of proving that jurisdiction exists. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In determining its own jurisdiction, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). The court should grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## III. ANALYSIS

### a. Defendants' motion to dismiss for lack of jurisdiction

Defendants have moved for the Court to dismiss Plaintiff's claims under Title VII for lack of jurisdiction. (ECF No. 31-3 at 7-17.) In support of this contention, Defendants argue that Plaintiff (1) failed to file her claim with the MCCR and wait the required 60 days prior to filing a charge with the EEOC; (2) failed to identify any claim other than retaliation in her EEOC charge of discrimination; (3) failed to identify Maryland in her EEOC charge; and (4) failed to

file her discrimination claims against Maryland within 300 days of the alleged discriminatory act. (*Id.*)

As Defendants correctly note, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC before filing a Title VII claim in this Court. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). However, here, Plaintiff did in fact exhaust her administrative remedies. Indeed, on July 9, 2010, Plaintiff filed a charge of discrimination with both the EEOC and the MCHR. (ECF No. 18-2 at 6.) Further, Maryland's "deferral agency, the Maryland Commission on Human Relations (MCHR), has a work sharing agreement with the EEOC whereby a claim filed before one commission is effectively filed before both." *Valderrama v. Honeywell Technology Solutions, Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007) (citing 29 C.F.R. § 1601.74).[4] Thus, Plaintiff's claim with both the EEOC and the MCHR were properly filed.

Next, the Court finds that Plaintiff's complaint does not exceed the scope of her charge with regard to cause of action or named defendants. Contrary to Defendants' claim to the contrary (ECF No. 31-3 at 10), Plaintiff's charge of discrimination alleges two "cause[s] of discrimination," namely "sex" and "retaliation." (ECF No. 18-2 at 6.) Further, the Court finds that Maryland is a defendant within the scope of the charge. Of course, the Court notes that Plaintiff listed only "Baltimore City & City Sheriff" as her employer on the charge, and not Maryland. And, ordinarily, "a plaintiff's failure to name a party within an EEOC charge would prohibit suit against the party for failure to exhaust administrative remedies." *Lipscomb v. Technologies, Services, & Information, Inc.*, Civil No. DKC 09-3344, 2011 WL 691605 at *6 (D. Md. Feb 28, 2011) (citing *Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll.*, 848 F.2d 457,

---

[4] Another consequence of the work sharing agreement is that, in Maryland, a complainant has 300 days in which to file a charge of discrimination under Title VII. 42 U.S.C. § 2000e-5(c); *Bradley v. Baltimore Police Dept.*, Civil No. JKB-11-1799, 2012 WL 4321738 at *3 (D. Md. Sept. 19, 2012).

458-59 (4th Cir. 1988)).  However, here, the Baltimore City Sheriff's Department is a state agency.  *See Wiley v. Ward*, 197 F. Supp.2d 384, 387-88 (D. Md. 2002).  As a result, Maryland had "constructive knowledge of an EEOC charge and is within the scope of the EEOC investigation." *Scanell v. Bel Air Police Department*, 968 F. Supp. 1059, 1066-67 (D. Md. 1997) (Davis, J.).  Therefore, the Court is persuaded that the naming requirement is satisfied and that the exercise of jurisdiction over the state of Maryland is proper.  *Id.*

### b.  Plaintiff's Hostile Work Environment Claim under Title VII (Count I)

In her first claim, Plaintiff alleges that Defendant Maryland created a work environment that was hostile to Plaintiff on the basis of her sex, to wit:

> The State, by and through Anderson, Martin, Gruz and others, engaged in intentional employment discrimination and employment practices which discriminated against Plaintiff, as alleged herein, on the basis of sex including but not limited to conditions creating a hostile work environment on the basis of sex, in violation of Title VII.

(Am. Compl. at ¶ 37.) Defendants argue that Plaintiff has failed sufficiently to allege a hostile work environment claim.  (ECF No. 31-3 at 25.)

In order to survive a motion to dismiss, the factual allegations of a plaintiff's complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if  doubtful in fact)."  *Twombly*, 550 U.S. at 555.  In the context of employment discrimination, the Supreme Court has explicitly held that at this stage in the proceedings, the Plaintiff need not plead a *McDonnell Douglas* prima facie case. *Twombly*, 550 U.S. 544 at 547 (2007) (citing Swierkiewicz *v. Sorema N.A.*, 534 U.S. 506, 508 (2002)), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  However, the elements of a prima facie case are nonetheless useful to the Court in determining whether or not a Plaintiff's allegations are sufficient. In a hostile work environment case, these elements are: "(1)

unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *James v. Anne Arundel County, Md.*, Civil No. CCB-10-2267, 2011 WL 3666776 at *3 (D. Md. Aug. 19, 2011) (alteration in original) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)).

In the present case, the Court finds that Plaintiff has failed to plead sufficient facts with regard to the second element, namely to show that her employer's conduct was based on her sex. To be sure, Plaintiff alleges that she was discriminated against "because of her sex" and further provides that she was the "only female in SOU." (Am. Compl. at ¶¶ 12, 26, 37.)  However, these allegations are not "enough to raise a right to relief [for discrimination on the basis of sex] above the speculative level." *Twombly*, 550 U.S. at 555.

Further, Plaintiff, herself, explicitly provides that the actions of her supervisors were "because of her contention that Deputy Lane was shot by a fellow Deputy during the September 2008 incident."  (Am. Compl. at ¶ 34.)  The Court is sympathetic to Plaintiff's claims that she was mistreated by her supervisors for being a whistle-blower, but such claims are not cognizable under Title VII.

Therefore, Count I of Plaintiff's complaint will be dismissed for failure to state a claim for which relief can be granted.

### c.  Plaintiff's Retaliation Claim under Title VII (Count II)

In Count II, Plaintiff alleges that Defendant Maryland violated 42 U.S.C. § 2000e-3(a) by "retaliat[ing] against Plaintiff for among other things complaining about adverse personnel and disciplinary actions, complaining to the Inspector General and filing a charge of discrimination

with the EEOC." (Am. Compl. at ¶ 47.) Defendants argue that Plaintiff has failed sufficiently to allege a retaliation claim. (ECF No. 31-3 at 30-34.)

In order to establish a claim of retaliation under Title VII, a plaintiff must show: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exists between the protected activity and the adverse employment action." *Tasclyan v. Medical Numerics*, 820 F.Supp.2d 665, 675 (D. Md. 2011) (citing *Davis v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 616-17 (D. Md. 2009; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). An employee can satisfy the first element by showing that she opposed a practice that Title VII prohibits. *Id.* However, "the plaintiff must have a reasonable and good faith belief that the conduct that she opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271 (2009)).

Here, Plaintiff's complaint suffers from the same short-comings as it does with regard to Count I. Ultimately, the conduct that Plaintiff opposed was not discrimination under Title VII. Rather, the picture that emerges from Plainitff's own pleadings is that she was discriminated against for arguing that Deputy Lane was shot by a fellow Deputy and contradicting the Sheriff Department's conclusion that Deputy Lane was shot by a suspect. (Am. Compl. at ¶ 34.)

As a result, the Court does not find that her pleadings allow the Court to make the inference that Plaintiff had a "reasonable and good faith belief that the conduct that she oppose[d] constitute[d] unlawful discrimination under Title VII." Thus, the Court finds that Plaintiff has not adequately pleaded a claim of retaliation under Title VII. Count II of Plaintiff's amended complaint must therefore be dismissed.

### d. Plaintiff's Claim under § 1983 (Count III)

In Count III of her amended complaint, Plaintiff alleges that "Defendants [Anderson, Martin, and Gruz] . . . violated equal protection rights of the Plaintiff as guaranteed by the Fourteenth Amendment to the U.S. Constitution by discriminating against her in employment, and by retaliating against her because of her sex." (Am. Compl. at ¶ 54.)[5]

However, as the Court has already explained in the context of Counts I and II, with regard to Count III, Plaintiff also fails to allege sufficient facts to support her contention that the Individual Defendants violated her Fourteenth Amendment rights "by discriminating against her . . . *because of her sex*." (Am. Compl. at ¶ 55 (emphasis added).) As a result, Plaintiff has failed to state a claim for which relief can be granted and Count III must be dismissed.

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING Defendants' motion to dismiss (ECF No. 31).

Dated this <u>23rd</u> day of April, 2014.

BY THE COURT:

<u>                    /s/                    </u>
James K. Bredar
United States District Judge

---

[5] The Court notes that Plaintiff is suing Anderson, Martin, and Gruz in their *personal* capacities (Am. Compl. at ¶ 8)--and not in their official capacities as Defendants content (ECF No. 31-2 at 17).